# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

DISH NETWORK L.L.C., )
        Plaintiff, ) Case No.
)
v. )
)
ARTISTRY GROUP LLC d/b/a 1 Dollar IPTV, KEMO E MARKETING SDN. BHD., NOORHAYATI BINTI ABDUL RAHIM, and AMMAR TOWIR, )
)
        Defendants. )

## COMPLAINT

Plaintiff DISH Network L.L.C. ("DISH") brings this suit against Defendants Artistry Group LLC d/b/a 1 Dollar IPTV, Kemo E Marketing Sdn. Bhd., Noorhayati Binti Abdul Rahim, and Ammar Towir.

## Nature of the Action

1. DISH is one of the largest pay-tv providers in the United States and has millions of subscribers nationwide. This case concerns the infringement of DISH's copyrights in programming ("Works") that aired on 22 Arabic, Hindi, and Bangla language channels that DISH exclusively licensed for transmission in the United States ("Channels").

2. Illegal streaming services can offer subscribers thousands of television channels at a fraction of the cost of legal providers such as DISH because they do not pay fees to license the content they deliver.

3. Kemo E Marketing Sdn. Bhd., Noorhayati Binti Abdul Rahim, and Ammar Towir (collectively "Direct Infringers") operate an illegal streaming service known alternatively as Lemo TV or Kemo IPTV (the "Service") and sell subscriptions to access the Service ("Service Subscriptions") to subscribers and resellers such as Artistry Group LLC d/b/a 1 Dollar IPTV ("Artistry Group") in the United States. Artistry Group and other resellers then sell the Service Subscriptions to additional subscribers.

4. DISH brings this suit for direct, contributory, and vicarious copyright infringement because Direct Infringers are taking broadcasts or streams of the Channels and unlawfully transmitting Works aired on the Channels over the internet throughout the United States on the Service. Direct Infringers are liable for direct copyright infringement, and Artistry Group is liable for contributory and vicarious copyright infringement.

5. Defendants demonstrated willfulness by continuing their conduct after receiving multiple demands from DISH to cease their infringements.

## Parties

6. Plaintiff DISH Network L.L.C. is a limited liability company organized under the laws of the State of Colorado, with its principal place of business located at 9601 South Meridian Blvd., Englewood, Colorado 80112.

7. Defendant Artistry Group LLC was a Florida Limited Liability Company doing business as 1 Dollar IPTV, with its principal place of business located at 7901 4th Street North, Suite 13012, St. Petersburg, Florida 33702.

Artistry Group was voluntarily dissolved on February 27, 2025. Artistry Group or its successors are continuing to do business as 1 Dollar IPTV.

8. Defendant Kemo E Marketing Sdn. Bhd. ("Kemo Marketing") is a private limited company organized under the laws of Malaysia, with its registered address located at 12-B, Jalan Suarasa 8/4, Town Park 1, Bandar Tun Hussein Onn, Cheras, Selangor, Malaysia.

9. Defendant Noorhayati Binti Abdul Rahim ("Rahim") is an individual believed to reside in Kuala Lumpur, Malaysia. Rahim is the director and sole shareholder of Kemo Marketing and as such had the right and ability to, and on information and belief did in fact, authorize, direct, or participate in, and receive direct financial benefits from the infringing activities of Kemo Marketing alleged herein.

10. Defendant Ammar Towir ("Towir") is an individual believed to reside in Kuala Lumpur, Malaysia. Towir owns and operates the Kemoiptv.io (formerly Kemoiptv.com) and Lemotv.io (formerly Lemotv.com) domains and websites (collectively referred to as the "Kemo and Lemo Websites") and financial accounts used by Kemo Marketing for the sale of Service Subscriptions. As such, Towir had the right and ability to, and on information and belief did in fact, authorize, direct, or participate in, and receive direct financial benefits from the infringing activities of Kemo Marketing alleged herein.

**Jurisdiction and Venue**

11. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 because DISH asserts claims under the Copyright Act, 17 U.S.C. § 101 *et seq*.

12. Artistry Group resided in and conducted business in the State of Florida, and therefore, is subject to this Court's personal jurisdiction.

13. Personal jurisdiction is proper against Direct Infringers pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) because they provide subscribers of the Service located in Florida ("Florida Subscribers") with access to the Channels and infringed Works, and they sell Service Subscriptions to Florida Subscribers. Direct Infringers also sell Service Subscriptions to resellers located in Florida, including Artistry Group, knowing they are likely to resell Service Subscriptions to Florida Subscribers.

14. In the alternative, the Court has personal jurisdiction over Direct Infringers pursuant to Federal Rule of Civil Procedure 4(k)(2). Direct Infringers are not subject to the jurisdiction of the courts of general jurisdiction of any state unless they are subject to the jurisdiction of the courts of general jurisdiction in Florida. Direct Infringers ran a marketing campaign directed towards subscribers and resellers in the United States by highlighting content as being "local" to the United States[1] and deliver infringing content to a United States audience. Direct

---

[1] The Kemo and Lemo Websites promoted the Service as providing "full access to NCAA, NBA, NHL, NFL" and "[n]ational and local sports programming from ABC, CBC, FOX, and NBC Sports

Infringers provide subscribers of the Service located in the United States ("United States Subscribers") with access to the Channels and infringed Works. Direct Infringers directly sell Service Subscriptions to United States Subscribers. Direct Infringers also sell Service Subscriptions to resellers located in the United States ("United States Resellers"), knowing they will resell Service Subscriptions to United States Subscribers. The United States is a high source of traffic for the Kemo and Lemo Websites with approximately 82% or 55,000 visits per month coming from the United States. DISH was harmed in the United States for the reasons identified above, and that harm is amplified because the Works were infringed throughout the United States and United States Subscribers nationwide avoided paying subscription fees to DISH. DISH was also harmed in the United States because it is a United States company operating in the United States and holds the copyrights at issue only for the United States.

15.  The Court's exercise of personal jurisdiction over Direct Infringers, whether pursuant to Rule 4(k)(1)(A) or 4(k)(2), is reasonable and consistent with the United States Constitution and United States law because their purposeful interjection into Florida and the United States is substantial, the burden of them having to defend in this Court is minimal, and this Court is the most appropriate forum to decide this case. Direct Infringers, in addition to their contacts with Florida and the United States identified above, used United States companies to

---

channels" and "including the NCAA, NBA, NHL, NFL . . . [w]ith top national sports channels and local sports channels in many cities."

support their business and promote their services, including Meta Platforms, Inc. ("Facebook/Instagram"), X Corp. ("Twitter/X"), Namecheap, and Cloudflare.[2] The United States has an interest in having its copyright laws enforced in its federal courts, and DISH has an interest in protecting itself in a United States federal court, perhaps the only forum where DISH can effectively enforce its United States copyrights for infringement that occurred in the United States.

16. Venue is proper in this Court under 28 U.S.C. § 1391(b)(3) because Defendants are subject to personal jurisdiction in this district and under § 1391(c)(3) because Direct Infringers are nonresidents that may be sued in any judicial district. Venue is also proper in this Court under 28 U.S.C. § 1400(a) because the case involves violations of the Copyright Act.

## DISH's Copyrights

17. DISH provides the Channels to its subscribers pursuant to agreements that it entered into with the Channels' owners or their agents ("Networks"). The Networks and Channels include the following: B4U U.S., Inc. (*B4U Movies*); Bennett, Coleman and Company Limited (*Times Now* and *Zoom*); GloboSat Entertainment LLC (*Sahara One* and *Sahara Samay*); International Media Distribution (Luxembourg) S.A.R.L. (*Al Hayah 1*, *ART Aflam 1*, *ART Aflam 2*, *ART Cima*, *Hekayat*, *LBC*, and *LBCI*); MSM Asia Limited (*SET*, *SET MAX*, and *SAB*); Soundview ATN LLC (*ATN Bangla*); Soundview Broadcasting, L.L.C. (*ATN*

---

[2] Direct Infringers' Facebook, Instagram, and Twitter/X accounts have been suspended, upon information and belief, because of notices of copyright infringement.

*News* and *NTV Bangla*); and World Span Media Consulting, Inc. (*CBC*, *CBC Drama*, *Melody Aflam*, and *Melody Classic*).

18. The Networks acquire copyrights in the Works that air on their respective Channels, including by producing the Works and by assignment. The copyrighted material includes Works registered with the United States Copyright Office and additional unregistered Works.[3] Several of the Works involve series, for which each episode constitutes a separate copyrighted Work.

19. DISH entered into signed, written licensing agreements with the Networks granting DISH the exclusive right to distribute and publicly perform the Works that air on the Channels in the United States, by means that include satellite, over-the-top (OTT), internet protocol television (IPTV), and internet.

20. DISH's exclusive rights to distribute and publicly perform the Works were in effect when Direct Infringers transmitted them to United States Subscribers. DISH's exclusive distribution and public performance rights remain in effect with respect to Works aired on many of the Channels.

## Direct Infringers' Wrongful Conduct

21. Direct Infringers distribute, sell, and promote Service Subscriptions to United States Subscribers and United States Resellers, including Artistry Group, and those resellers in turn distribute, sell, and promote Service Subscriptions to

---

[3] Exhibit 1 (illustrative list of Works subject to registration) and Exhibit 2 (illustrative list of unregistered Works).

additional United States Subscribers.[4] The Service Subscriptions provide access to the Service.

22. Direct Infringers promote the Service to United States Subscribers and United States Resellers on their Kemo and Lemo Websites, claiming to be the "BEST IPTV PROVIDER" and the Service is "the Ultimate IPTV Service" that provides "all TV you love" and "all your favorite TV in one place" with "over 18,000 live channels" and "over 8,400 shows," allowing United States Subscribers to "stream all [their] favorite channels, [and] full seasons of exclusive series" and to gain "full access to the greatest and latest shows."

23. Direct Infringers offer United States Subscribers a 36-hour trial to the Service and sell Service Subscriptions for one device for one month, three months, six months, and one year at prices ranging from $11 to $69.[5]

24. Direct Infringers also leveraged their Kemo and Lemo Websites to promote the Service to United States Resellers, defining a reseller as "someone that acquires a certain amount of credit to sell IPTV accounts to a third party." Direct Infringers offered United States Resellers the opportunity to rebrand the Service under their own name for selling to United States Subscribers, providing a website for $145 or $165 and an app for $199. United States Resellers then purchase monthly credits from Direct Infringers, which each represent one month of service,

---

[4] Direct Infringers' other resellers include individuals or entities managing the websites: Xtremehdiptv.org, Bestusiptv.com, Slingtvbox.com, Fubo-iptv.com, Tv-wave.com, Kemoiptv.shop, Geministreamz.us, Honeybee-tv.com, Honeybeeiptv.org, Honeybeeiptv.io, Dynastyiptv.shop, Dynastyiptv.com, Dynasty-iptv.com, Caliptostreams.com, and 4kliveiptv.com.
[5] https://kemoiptv.io/oi/; https://lemotv.io/

priced at $150 for 100 credits, $290 for 200 credits, $560 for 400 credits, $999 for 740 credits, $2000 for 1550 credits, and $3000 for 2400 credits. Screenshots from the Kemo and Lemo Websites, provided below, illustrate these offerings to United States Resellers.





25. Direct Infringers use an IPTV panel—a software-based web interface—to add and activate devices for United States Subscribers who purchase Service Subscriptions directly from them. Direct Infringers also provide each United States Reseller with access to an IPTV panel where "[a]fter logging in

9

successfully you can create accounts for different devices and can deal with clients through it." In other words, United States Resellers use their IPTV panels to add and activate devices for United States Subscribers who buy Service Subscriptions from them.

26. The Service transmits the Works to United States Subscribers soon after the original authorized transmission. Direct Infringers take broadcasts or streams of the Works, transfer them to one or more computer servers provided, controlled, and maintained by Direct Infringers and then transmit the Works to United States Subscribers through OTT delivery.

27. Direct Infringers control the transmission of the Works on the Service. This is supported by Terms and Conditions on the Kemo and Lemo Websites, which state "Channels and VOD in any package are subject to update, change, or removal at any time without prior notice," "[w]e perform maintenance to our servers from time to time," and "for any issue that comes to the servers, stopping or not working content contact us and we will do our best to fix the problems."

28. United States Subscribers can receive the Works from the Service by: (1) powering on an Android device and connecting it to a television or monitor and the internet; (2) downloading the Kemo app, Lemo app, a reseller's custom app, or another supported streaming app identified on the Kemo and Lemo Websites [6] (collectively "App") to the Android device; (3) purchasing a Service Subscription from Direct Infringers or a reseller and providing them with the name of their

---

[6] https://kemoiptv.io/oi/iptv-installation/; https://lemotv.io/lemotv-app/

10

device, App, and MAC Address of the Android device for activation; (4) entering the login credentials received from Direct Infringers or a reseller into the App, including the URL, username, and password; and (5) selecting the Channels. Direct Infringers provided setup guides to assist United States Subscribers in entering the login credentials into the App.

29.  Direct Infringers have actual knowledge that the transmission of the Works on the Service infringe DISH's copyrights. DISH and Networks sent at least 96 notices of infringement to Direct Infringers from February 17, 2021 to the filing of this Complaint, requesting the removal of the Works. Direct Infringers have not responded to DISH or Networks concerning any of the notices of infringement.

30.  DISH and Networks also sent at least 272 notices of infringement to Direct Infringers' hosting providers associated with the Service from February 17, 2021 to the filing of this Complaint, requesting the removal of the Works. Upon information and belief, at least some notices of infringement that DISH and Networks sent to hosting providers were forwarded to Direct Infringers. Even when these hosting providers removed the unauthorized content based on Direct Infringers' copyright infringement, Direct Infringers intentionally interfered with the takedown efforts by, for example, transmitting the Works from different hosting providers or locations.

## **Artistry Group's Wrongful Conduct**

31.  Artistry Group is a United States Reseller of Service Subscriptions, that distributes, sells, and promotes Service Subscriptions to United States

11

Subscribers. The Service Subscriptions provide access to the Service.

32. Artistry Group promotes the Service to United States Subscribers through its websites 1Dollariptv.com and 1Dollariptv.net (collectively referred to as the "1DollarIPTV Websites"), claiming to be the "Best IPTV Service USA" "with USA servers" and the Service has "unrivaled IPTV streaming" "with 24/7 Uptime and Zero Buffering!," provides "18,000+ channels," and "whether it's sports, movies, news, or entertainment, you'll always have quick access to your favorite content."[7]

33. Artistry Group offers United States Subscribers a 36-hour free trial and sells Service Subscriptions for one device for $9.99 for one month, $24 for three months, $47 for six months, $75 for one year, $140 for two years, and $300 for lifetime.[8]

34. An investigator visited 1dollariptv.com in November 2024 and purchased a Service Subscription for 12 months for two devices for $140.

35. Artistry Group then sent the investigator an email including the username, password, and URL for accessing the Service.

36. DISH confirmed the Service Subscription purchased from Artistry Group in November 2024 accessed the Service that was publicly performing the Works in the United States.

---

[7] https://1dollariptv.com/index/; https://1dollariptv.net/
[8] https://1dollariptv.com/index/free-trial/; https://1dollariptv.net/free-trial/; https://1dollariptv.com/index/pricing/; https://1dollariptv.net/pricing/

12

37. Artistry Group uses an IPTV panel to add and activate devices for United States Subscribers who purchase Service Subscriptions directly from them.

38. Artistry Group has actual knowledge that the transmission of the Works on the Service infringes DISH's copyrights. DISH and Networks sent at least seven notices of infringement to Artistry Group from December 3, 2024 to the filing of this Complaint, requesting the removal of the Works and that Artistry Group cease facilitating access to the Works. Artistry Group responded to one of the notices of infringement confirming it was facilitating access to the Works, but it has not otherwise responded and is continuing to distribute, sell, and promote service subscriptions.

## CLAIMS FOR RELIEF

### Count I

### Direct Copyright Infringement Under 17 U.S.C. § 501

### Against Direct Infringers

39. DISH repeats and realleges the allegations in paragraphs 1-38.

40. DISH is a copyright owner under 17 U.S.C. § 106 because, at all relevant times, DISH held the exclusive rights to distribute and publicly perform the Works in the United States, by means that include satellite, OTT, IPTV, and internet.

41. The Works are copyrightable subject matter because they are original audiovisual works fixed in a tangible medium of expression. DISH's copyrights in the Works arise under laws of nations other than the United States that are parties

to copyright treaties with the United States, including Egypt, Lebanon, Saudi Arabia, India, and Bangladesh where the Works were authored and first published.

42. The Works constitute non-United States works under 17 U.S.C. §§ 101 and 411, and therefore registration with the United States Copyright Office is not a prerequisite to filing a copyright infringement action for the Works. Nonetheless, numerous Works are registered with the United States Copyright Office.

43. DISH's exclusive rights to publicly perform the Works were directly infringed by Direct Infringers' unauthorized transmission of the Works to United States Subscribers. The Works were transmitted from computer servers controlled by Direct Infringers to United States Subscribers who accessed the Works using Service Subscriptions when DISH's exclusive rights to publicly perform the Works were in effect.

44. DISH has not authorized Direct Infringers to publicly perform the Works in any manner.

45. The infringement of DISH's rights in each Work constitutes a separate and distinct act of copyright infringement.

46. Direct Infringers' actions were willful, malicious, intentional, and purposeful, and in disregard of and with indifference to the rights of DISH. The actions of Direct Infringers are continuing.

47. Unless enjoined by the Court, Direct Infringers will continue engaging in acts that cause substantial and irreparable injury to DISH that includes lost

sales, damage to its reputation, and loss of goodwill for which there is no adequate remedy at law.

## Count II

## Inducing and Materially Contributing to Copyright Infringement

## Under 17 U.S.C. § 501

## Against Artistry Group

48. DISH repeats and realleges the allegations in paragraphs 1-38 and 40-44.

49. DISH's exclusive right to publicly perform the Works are directly infringed by the unauthorized transmission of the Works to United States Subscribers who access them using the Service.

50. Artistry Group materially contributes to this infringement of DISH's exclusive public performance rights by, among other things, providing United States Subscribers access to the Works, despite having the ability to prevent such access. Artistry Group also induces the infringement of DISH's exclusive public performance rights by, among other things, creating or expanding the audience for that infringement in the United States.

51. Artistry Group materially contributes to and induces the infringement by assisting United States Subscribers in accessing the Service. Artistry Group sells Service Subscriptions to United States Subscribers. Artistry Group activates the Service Subscriptions using its IPTV panel and provides the United States Subscribers the username, password, and URL for accessing the Service. The

United States Subscribers can then access unauthorized streams of the Works by simply powering on the Android device, connecting it to a television or monitor and the internet, downloading an App to the Android device, entering the login credentials received from Artistry Group into the App, and selecting the Channels. Artistry Group also provides United States Subscribers with the Service through a 36-hour free trial.

52. Artistry Group induces the infringement by advertising the Service as a means for accessing the Works. Artistry Group claims the Service is the "Best IPTV Service USA," has "unrivaled IPTV streaming" "with 24/7 Uptime and Zero Buffering!," provides "18,000+ channels," and "whether it's sports, movies, news, or entertainment, you'll always have quick access to your favorite content." Artistry Group also provides a 36-hour free trial of the Service to confirm that the Works are provided on the Service.

53. Artistry Group intends that the Service be used to access the Works, and it promotes, encourages, and facilitates using the Service in this manner.

54. Artistry Group has actual knowledge that the transmission of the Works to United States Subscribers infringes DISH's exclusive public performance rights.

55. Artistry Group is capable of taking simple measures to prevent further infringement of DISH's exclusive rights to publicly perform the Works, such as using its IPTV panel to deactivate Service Subscriptions for United States Subscribers and ceasing to sell the Service Subscriptions.

56. The infringement of DISH's rights in each Work constitutes a separate and distinct act of copyright infringement.

57. Artistry Group's actions were willful, malicious, intentional, and purposeful, and in disregard of and with indifference to the rights of DISH. The actions of Artistry Group or its successors are continuing.

58. Unless enjoined by the Court, Artistry Group or its successors will continue engaging in acts that cause substantial and irreparable injury to DISH that includes lost sales, damage to its reputation, and loss of goodwill for which there is no adequate remedy at law.

## Count III

## Vicarious Copyright Infringement Under 17 U.S.C. § 501

## Against Artistry Group

59. DISH repeats and realleges the allegations in paragraphs 1-38 and 40-44.

60. Direct Infringers infringed DISH's copyrights in the Works by acting as the source that was publicly performing them to United States Subscribers. The Works were transmitted from computer servers controlled by Direct Infringers to United States Subscribers that accessed the Works using the Service.

61. Artistry Group has the legal right and the actual ability to supervise and control the infringing activity of Direct Infringers, and Direct Infringers depend upon Artistry Group to sell, activate, and deactivate Service Subscriptions. Direct Infringers sell Service Subscriptions to resellers including Artistry Group,

whom Direct Infringers depend upon to sell the Service Subscriptions to United States Subscribers. Direct Infringers provide Artistry Group access to its IPTV panel where Direct Infringers depend upon Artistry Group to activate and deactivate Service Subscriptions for United States Subscribers. Artistry Group had control to deactivate the Service Subscriptions, which would have prevented Direct Infringers' public performance of the Works to United States Subscribers and thereby limited Direct Infringers' direct infringement.

62. Artistry Group received a direct financial benefit from the public performance of the Works transmitted to United States Subscribers. The availability of the Works attracted and drew United States Subscribers to purchase the Service Subscriptions from Artistry Group, resulting in an increase in its sales.

63. The infringement of DISH's rights in each Work constitutes a separate and distinct act of copyright infringement.

64. Artistry Group's actions were willful, malicious, intentional, and purposeful, and in disregard of and with indifference to the rights of DISH. The actions of Artistry Group or its successors are continuing.

65. Unless enjoined by the Court, Artistry Group or its successors will continue engaging in acts that cause substantial and irreparable injury to DISH that includes lost sales, damage to its reputation, and loss of goodwill for which there is no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, DISH prays for judgment against Defendants as follows:

A.  A permanent injunction under 17 U.S.C. § 502 that prohibits Defendants, and any of their agents, servants, employees, attorneys, or any other persons acting in active concert or participation with them (including resellers of the Service Subscriptions), from:

1.  transmitting, streaming, distributing, or publicly performing in the United States, with any Service, Subscription, any other device, application, service, or process, any of the Channels or Works;

2.  distributing, selling, providing, or promoting any product or service in the United States, including any Service or Subscription, that comprises the whole or part of a network or service for the distribution or public performance of any of the Channels or Works;

3.  advertising, displaying, or marketing any Service, Subscription, or other service or device in connection with any of the Channels or Works;

4.  inducing or contributing to another's conduct that falls within 1, 2, or 3 above; and

5.  selling, leasing, licensing, assigning, conveying, distributing, loaning, encumbering, pledging, or otherwise transferring, whether or not for consideration or compensation, any part of their infringing operations;

B.  Statutory damages up to $150,000 for each registered Work infringed (including the 181 registered Works identified in Exhibit 1) under 17 U.S.C. § 504(c), or Defendants' profits that are attributable to the infringement of those registered Works under 17 U.S.C. § 504(b);

C. Defendants' profits that are attributable to the infringement of each unregistered Work under 17 U.S.C. § 504(b);

D. DISH's attorneys' fees and costs under 17 U.S.C. § 505;

E. Impoundment and disposition of all infringing articles under 17 U.S.C. § 503;

F. Permanently transferring each domain name that any of the Defendants used in connection with the infringement to DISH;

G. Pre-judgment and post-judgment interest on all monetary relief, from the earliest date permitted by law at the maximum rate permitted by law; and

H. Such additional relief as the Court deems just and equitable.

Dated: October 17, 2025

/s/ James A. Boatman, Jr.
James A. Boatman, Jr.
Florida Bar No. 0130184
BOATMAN RICCI
3021 Airport-Pulling Road North, Suite 202
Naples, Florida 34105
Telephone: (239) 330-1494
Email: courtfilings@boatmanricci.com

Stephen M. Ferguson (*pro hac vice* to be filed)
HAGAN NOLL & BOYLE, LLC
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Telephone: (713) 343-0478
Facsimile: (713) 758-0146
Email: stephen.ferguson@hnbllc.com

**Counsel for Plaintiff DISH Network L.L.C.**